UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 08 C 6425 |
| v. ) | |
| ) | Judge Darrah |
| LeCLAIR RYAN P.C., a State of Virginia ) | |
| Professional Corporation, f/k/a WRIGHT, ) | |
| ROBINSON, OSTHIMER & TATUM P.C., ) | |
| FORMALLY a State of Virginia Professional ) | |
| Corporation, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant's Motion to Dismiss Plaintiff's Complaint, alleging state-law claims: legal malpractice, breach of contract/fiduciary duty, and intentional infliction of emotional distress. For the reasons stated below, Defendant's motion is granted.

## BACKGROUND

Plaintiff's Complaint alleges the following facts. Plaintiff Robert Davis is a Vietnam War veteran who was diagnosed with Post-Traumatic Stress Disorder (PTSD) in 1991. In 1993, Plaintiff filed a claim for veteran's benefits through the Department of Veterans Affairs. This claim was denied in 1994, and Plaintiff appealed. In 1999, Judge Susan Kennedy of the Board of Veterans Appeals (BVA) remanded the case for further consideration. Plaintiff's claim was denied again in 1999, and he again appealed. Judge Kennedy reviewed Plaintiff's claim again and denied it in 2000. Plaintiff appealed to the U.S. Court of Appeals for Veterans Claims. The

court of appeals remanded the case to Judge Kennedy. Judge Kennedy denied the claim for a third time in 2002.

Following the 2002 denial, Attorney Daniel Krasnegor of the Defendant law firm of LeClair Ryan (formerly Wright, Robinson, Osthimer & Tatum) contacted Plaintiff. Plaintiff and Krasnegor signed a client/attorney agreement. In the interim, the Court of Appeals remanded the case back to the BVA in 2003. Plaintiff asked Krasnegor to file a waiver, petitioning the BVA from remanding the case to the Chicago reviewing office and to bar Judge Kennedy from reviewing the case. Krasnegor allegedly ignored the request. In 2004, Plaintiff's PTSD claim was remanded to the Chicago reviewing office and was denied. Plaintiff again appealed, and the claim was denied by the BVA in 2006. Plaintiff again appealed to the Court of Appeals. Plaintiff again asked Krasnegor to submit a waiver barring Judge Kennedy from reviewing the case if the Court of Appeals remanded (which it did in 2007). Krasnegor informed Plaintiff that it was his legal opinion that he could not move to bar Judge Kennedy from handling the case.

Following the Court of Appeals' 2007 remand, Plaintiff and Krasnegor entered a contingent fee contract.[1] Subsequently, Plaintiff asked Krasnegor to file a waiver to bar the

---

[1] The contract language stated:
>  The Client agrees to pay Attorney a 20% (twenty percent) fee on any retroactive benefits that Client is awarded as a result of the granting of any claim remanded by the Court pursuant to U.S. Vet. App. No. 06-0112. *It is understood that the amount of the fee owed by the Client will be reduced by the amount of EAJA fees and other costs paid, if any, to the Attorney on appeal of this matter to the U.S. Court of Appeals for Veterans' Claims, if another appeal becomes necessary.*
>
>  The Client specifically requests and authorizes the Department of Veterans Affairs to withhold such payment from any lump sum payment which may eventually be owed to the Client for past due benefits, and to disburse the same to Attorney. If the Department of Veterans Affairs fails to withhold such payment for any reason, Client agrees that he will be personally liable for payment of the full 20% contingency fee directly to Attorney."

Def's Mem. in Support at 4, filed Feb. 2, 2009 (emphasis in original).

2

BVA's remand from going to the Chicago office. Krasnegor allegedly ignored this request, and no waiver was filed. Plaintiff ended his contract with Krasnegor on October 1, 2007.[2]

Plaintiff, acting *pro se*, filed this action, invoking diversity jurisdiction and alleging three counts: (1) "[A]s a direct and proximate cause of Defendant's legal malpractice and negligence under Illinois common law, the Plaintiff has suffered pecuniary and emotional damages from September 24, 2002 through August 7, 2008 by not receiving . . . entitlement benefits for PTSD;" (2) "[A]s a direct and proximate cause of Defendant's Breach of Contract and Fiduciary Duty under Illinois common law, as well as the violation of 38 U.S.C. § 5904(c)(1), the Plaintiff has suffered pecuniary and emotional damages;" and (3) "As a direct and proximate cause of the Defendant's violations of Fiduciary and Ethic duties as the Plaintiff's attorney, as well as with full knowledge of the Plaintiff's PTSD diagnosis, the Plaintiff request[s] the Defendant be ordered to pay pecuniary, emotional and punitive damages for the Intentional Infliction of Emotion[al] Distress." Krasnegor subsequently filed a motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## LEGAL STANDARD

While a complaint attacked by a Rule 12 motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct 1955, 1964-65 (2007) (*Bell Atlantic*). Factual allegations must be enough to raise a right to relief above the speculative level. *Bell Atlantic*, 127 S.Ct at 1965. At the same time, courts must give significant flexibility

---

[2] Plaintiff was ultimately granted his benefits in August 2008, with a 50 percent rating of disability under 38 U.S.C. § 1114, 1134. (*See* Def's Reply, App'x E at 7). Plaintiff appealed the August 2008 decision in a separate, unrelated action.

3

for *pro se* filed complaints. *See Erickson v. Pardus*, 127 S.Ct 2197, 2200 (2007) (*Erickson*) (citing Fed. R. Civ. Proc. 8(f)) ("All pleadings shall be so construed as to do substantial justice").

To satisfy diversity jurisdiction, plaintiff must demonstrate a good faith, minimally reasonable belief that its claim will result in a judgment in excess of the statutorily required amount in controversy. *Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 881 (7th Cir. 2001) (*Neuma*). A plaintiff invoking federal jurisdiction must, if material factual allegations are contested, prove those jurisdictional facts by a preponderance of the evidence. *See LM Ins. Corp. v. Spaulding Enterprises Inc.*, 533 F.3d 542, 547 (7th Cir. 2008) (*LM Ins. Corp.*) (citing *Meridian Security Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006)).

A plaintiff filing a suit on behalf of a third party must demonstrate sufficient closeness and an inability on the part of the third party to bring the suit on his own behalf to demonstrate standing; failure to meet these two conjunctive criteria bars a plaintiff from having standing. *See Kowalski v. Tesmer*, 543 U.S. 125 (2004) (*Kowalski*).

## ANALYSIS

As in any case involving diversity jurisdiction, before proceeding to the merits, the Court must independently determine whether the parties meet the diversity-of-citizenship and amount-in-controversy requirements of 28 U.S.C. § 1332. *Thomas v. Guardsmark*, 487 F.3d 531, 533 (7th Cir. 2007) (*Thomas*). Under the federal notice-pleading standard, a complaint need not be well-proven or even well-articulated; rather, it must be well-pled, meaning it must give the defendant notice as to what the plaintiff is claiming; and it must give the court notice as to what the crux of the case or controversy is before it. *See Erickson*, 127 S.Ct at 2200.

Plaintiff's Complaint fails to satisfy the amount-in-controversy requirement of diversity jurisdiction under §1332. While this Court acknowledges the Plaintiff is acting *pro se* and, therefore, is entitled to a more flexible review of his Complaint (*Erickson*, 127 S.Ct at 2200), the Complaint filed here does not state at all how Plaintiff might be able to reasonably aggregate his claims to a sum greater than $75,000; rather, Plaintiff concludes that he satisfies the jurisdictional requirement based simply on his labeling of his claims. Moreover, Plaintiff fails to allege or state in any of his pleadings what his disability was or could reasonably be. His Complaint is wholly dependent on speculation as to the amount of harm Defendant's alleged actions caused him.[3] This is an insufficient pleading. *Bell Atlantic*, 127 S.Ct. at 1965.

The only dollar amount in the filings that could be exclusively linked to the controversy between Plaintiff and Defendant is the alleged balance of the contract Plaintiff owed to Krasnegor for representation. The balance of the contract is $2,503.48[4], and it has nothing to do with any of Plaintiff's claims for damages.

Additionally, Plaintiff claims that the alleged breach of fiduciary duty by the Defendant should result in the "disgorgement [of the amounts Defendant has] already been paid" by the U.S. Government on his behalf.[5] However, Plaintiff lacks standing to seek disgorgement of funds paid by the Government. *See Kowalski*, 543 U.S. at 129-30.

Furthermore, even if diversity jurisdiction existed, Plaintiff's claims are insufficient and dismissed.

---

[3] The only portion of either party's filings addressing Plaintiff's disability appears as appendix E, ¶ 28, attached to Defendant's reply, filed March 17, 2009. The attachment was from Plaintiff's Rule 21: Extraordinary Relief Petition filed in the U.S. Court of Appeals for Veterans Claims. Plaintiff informs the Court of Appeals that he was adjudged 50 percent disabled by the Chicago office and that he felt this was too low of a figure in light of the previous rating of 100 percent he held until 2003.
[4] *See* Pl's Response ¶ 12, filed Mar. 3, 2009 *and* Def's Mem. in Support at 8, filed Feb. 2, 2009.
[5] Pl's Response ¶ 10, filed Mar. 3 2009.

*Legal Malpractice*

To prevail in a legal malpractice action, the complainant must demonstrate that an attorney/client relationship existed; that a duty arose from that relationship; that the defendant breached that duty; and that complainant suffered actual damages as a proximate result of the breach. *Radtke v. Murphy*, 312 Ill.App.3d 657, 662 (1st Dist. 2000). Plaintiff's Complaint is that Defendant failed to file a waiver under 38 CFR § 19.12(b),[6] seeking to disqualify Judge Kennedy from rehearing this case. However, as Judge Kennedy found, § 19.12(b) did not apply to her because Judge Kennedy was neither a "member of the Board" who had previously participated in the agency decision or subsequently participated in the Court of Appeals review.[7] Therefore, Defendant did not breach a duty to Plaintiff by not filing a waiver, challenging Judge Kennedy. Moreover, nowhere in the controlling regulation of § 19.12 is there a provision allowing for an attorney to submit waivers to judges, requesting their recusal.

*Breach of Fiduciary Duty/Contract*

Plaintiff's Count II is premised on the same conduct as alleged in Count I. Therefore, Count II fails for the same reason discussed above.

---

[6] In pertinent part, 38 CFR § 19.12(b) states:
> "Appeal on same issue subsequent to decision on administrative appeal. Any Member of the Board who made the decision on an administrative appeal will disqualify himself or herself from acting on a subsequent appeal by the claimant on the same issue."

[7] Judge Kennedy ruled that § 19.12(b) did not foreclose her rehearing of the case, and such a reading is correct (notwithstanding her incorrect citation to § 19.12(a)). Reading § 19.12(b) as part of the entire regulation promulgated under § 19.12, it becomes clear from the plain meaning of the language in the regulation that the secretary's concern was focused on situations in which individuals who were supervisors of the reviewing agency that rendered the original opinion were appointed to the BVA during the interim between the rendering of the administrative decision and the review by the BVA. Section 19.12(b) merely supports this reading and seeks to prevent either a BVA judge or agency supervisor who renders a decision from reviewing the decision in the event he or she is appointed to the Court of Appeals.

6

*Intentional Infliction of Emotional Distress*

Finally, to state a cause of action for intentional infliction of emotional distress, Plaintiff must plead facts showing that: (1) Defendant's conduct was extreme and outrageous; (2) Defendant either intended to inflict severe emotional distress or knew that there was a high probability that Defendant's conduct would do so; and (3) Defendant's conduct actually caused severe emotional distress. *Thomas v. Fuerst*, 345 Ill.App.3d 929, 935 (1st Dist., 2004) (*Thomas*).

Under Illinois law, extreme and outrageous conduct is conduct that exceeds all bounds of human decency and is regarded as intolerable in a civilized community. *Thomas*, 345 Ill.App.3d 929. Even reading the allegations in Plaintiff's Complaint in the light most favorable to him, this standard is not met.

## CONCLUSION

For the reasons articulated above, Defendant's Motion to Dismiss is granted. Plaintiff's Complaint is dismissed for lack of diversity jurisdiction under 28 U.S.C. § 1332 and for failing to state a claim upon which relief can be granted.

DATE: May 12, 2009

JOHN W. DARRAH
United States District Court Judge